Emott, J.
It sufficiently appears that Seaver, who is mentioned in the answer, and spoken of in the evidence, was an agent of the plaintiffs, and was authorized to execute for them, certificates of the character proved in the case. It also appeared, and was admitted by both parties at the trial, that such a certificate was signed by Seaver, and delivered to the defendant as the consideration for his note. This was the act of the corporation, and was as binding upon them as.if it had been specially authorized or directed by the trustees, or had been formally executed by the officers.
The note upon which this action is brought, is payable at the election of the maker either in four yearly installments, or when $50,000 had been subscribed towards the endowment of the Genesee College. It is contended that as there was no evidence of an election by the defendant to pay in annual installments, and the money was therefore due when the sum required was subscribed, the plaintiffs was bound to aver and prove notice .to the defendant, of the completion of the subscription an# demand of payment before bringing the suit. The contract itself does not stipulate for such a notice, nor is a right to notice implied from its terms. The subscription of $100,000 was a fact as easily ascertainable by the defendant as the plaintiffs. The áet to be performed was certain, and it was to be performed by third parties. The condition was not a matter of choice or volition of the plaintiffs or which was locked up within their own breast, but a fact of which the defendant might indeed have required the plaintiffs to give Mm notice, but of which, in the absence of such requirement, be is bound to take notice at Ms own peril. This is the rule given in terms in 16 Vin. Abr., Tit. Notice, p. 5, pl. 10; and it accords with Com. Dig., Condition L., 9; Powle v. Hagger, Cro. Jac., 492; Henning’s case, id., 432. The rule is well stated by Lord Abinger in Hyse v. Wakefield (6 Mees. & Welsh., 451.) “ Where a party stipulates to do a certain thing in a certain specific event which may become known to him, or with which he may make himself acquainted, he is not entitled to any notice unless he stipulates for it; but when it is *207 to do a thing which lies within the peculiar knowledge of the opposite party, then notice ought to be given him.” To the same effect is Douglas v. Howland (24 Wend., 48), in which numerous authorities on the point are cited by Judge Cowen.
The remaining question, and that upon which the Supreme Court reversed the judgment at the circuit, is whether the plaintiffs had power to contract with the defendant in the . terms of their certificate, that he, his heirs and assigns, should have the perpetual privilege of having one scholar educated free from the regular tuition charges in any or all the solid branches taught therein, either in said Genesee College or in the Genesee Wesleyan Seminary. I see no reason to question the power of the corporation to make such a contract for instruction in their own college. If all the students of such an institution were foundationers or scholars free of tuition charges, it would not follow that no revenue would be derived from them, for it-is obvious that boarding and lodging students may be, and it is well known that it often is, more remunerative to colleges and schools than their tuition fees. But we are not concerned with the economical, or more or less profitable working of such a plan; The object of the corporation is a public one, the promotion of education; and the ordinary means to this is the instruction of young men. It is unquestionable that this may be pursued by a college perfectly free of all charges; and, indeed, if by any scheme a sufficient endowment could befurnished to make all the students foundationers or free scholars, the institution might be said preeminently to promote and diffuse education and learning.
The stress of the defendant’s argument was upon the alternative agreement of the plaintiffs to educate a scholar either in their own college or in the Genesee Wesleyan Seminary. It is not stated in the paper to whom the choice is reserved, but it may be admitted that the defendant might exercise the election. The question then is, whether the plaintiffs had power to contract with the defendant for the education of a student in the Genesee Wesleyan Seminary. The Supreme Court seem to have supposed that this seminary was a theo *208 logical school, and considerable importance is given in the opinion at general term to the supposed fact that this would be an appropriation of the funds of the college to theological purposes, contrary to .section 7 of its charter. (Laws of 1849, p. 88, ch. 52.) There was no evidence at the trial to show what the nature of this seminary is, and it cannot be assumed that it is a school of theology, or an institution of any different nature from the Q-enesee College. In point of fact the Supreme Court were mistaken in supposing it to be a theological institution, as will be seen by looking into its charter. (Laws of 1834, ch. 225, p. 401.) It was established, as its name imports, as a “ seminary of learning.” The charter of the plaintiffs (Laws of 1849, q. s.), creates a corporation “for the purpose of establishing a college,” the object of which is declared to be, “to promote education in general, and to cultivate and advance literature, science and the fine arts.” The corporation is declared to be subject to the-provisions of the Revised Statutes, restricting a corporation from the exercise of any powers except such as are necessary to the exercise of those expressly granted in its charter. (1 R. S., 600.) Both of the institutions above referred to, are situated at Lima in Livingston county, and the 10th and 11th sections of the charter of the college, authorizes it to purchase or lease any property of the seminary to be used for the purposes of this act. It is not probably to be supposed that these sections of the charter expressly contemplated an arrangement for the tuition of pupils in one institution at the expense or by the procurement of the other. But they indicate a connection between them which may lend some sanction to an arrangement by which both may be made to contribute to the object of the incorporation of the college. There is nothing in the charter of the college to forbid it or its trustees from employing the agency or assistance of another school or its teachers, in educating young men or promoting education in general. The purpose of the incorporation is the establishment of a college which includes not only buildings, but teachers and scholars. The object of the college is to promote education, and culti *209 vate and advance literature and science. This object it may pursue by any means not forbidden, and I think it may employ other teachers and other seminaries as preparatory to its own course, or even as a mode of dispensing the instruction ■ it professes to give. In a case in Massachusetts, Amherst Academy v. Cowles (6 Pick., 427), an academy incorporated “ to promote morality, piety and religion, and for the instruction of youth in the learned languages, and in arts and sciences,” was held capable of taking the promissory notes of individuals to constitute a fund to found another institution “for the classical or academical and collegiate education of young men with a view to the Christian ministry.” The powers which such a corporation possesses should be liberally construed, and their exercise allowed with a wide discretion within the field of its objects.
I am of opinion that the Supreme Court erred in reversing the judgment at the circuit, and their order should be reversed and that the plaintiff should have judgment on the note.
Denio, Ch. J., Davies, Wright and Rosekrans, Js., concurred. Balcom and Marvin, Js., dissented. Selden, J., did not sit in the case.
Order for new trial reversed, and judgment for plaintiff.